


FILED
**Jul 14, 2022**
**11:17 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Ronald D. Brawley ) | Docket No. 2020-05-0775 |
| ) | |
| v. ) | State File No. 39924-2019 |
| ) | |
| Construct All USA, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Pamela B. Johnson, Judge ) | |

---

### Affirmed and Remanded

---

The employee reported experiencing head, neck, shoulder, and back injuries when a truck door struck him. The employer accepted the compensability of the accident and authorized certain medical treatment. Following a layoff, the employee began working for a different company. Thereafter, the employee sought additional medical care, but a dispute arose regarding whether medical treatment for the employee's cervical spine and shoulders arose primarily from the work accident. Following an evidentiary hearing, the trial court determined the employee had not come forward with sufficient evidence to support his claim for additional medical benefits, and the employee appealed. After careful consideration of the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

R. Steven Waldron, Murfreesboro, Tennessee, for the employee-appellant, Ronald D. Brawley

Jeffrey G. Foster, Jackson, Tennessee, for the employer-appellee, Construct All USA, Inc.

### Factual and Procedural Background

Ronald D. Brawley ("Employee") worked for Construct All USA, Inc. ("Employer"), as a project manager. On January 1, 2019, Employee was helping the owner of the company unload a moving truck when the trailer door came loose, swung around, and struck Employee on his neck, shoulder, and back. Employee testified that the door "knocked [him] forward," but he did not fall. He continued working and did not seek

1

medical care at that time. Over the following weeks, however, Employee experienced pain and other symptoms in his lower back and shoulders, and he eventually requested medical care. Employer provided a panel of physicians from which Employee selected Dr. Frank Thomas at Concentra.

Employee first saw Dr. Thomas on June 4, 2019, at which time Employee reported pain in his lower back and both shoulders. X-rays revealed no abnormalities, and Dr. Thomas diagnosed shoulder and low back contusions and prescribed medications and physical therapy. In his report, Dr. Thomas noted that Employee reported no radiating pain but that he experienced "moderate" pain "frequently." Dr. Thomas ordered MRIs of both shoulders, which revealed "evidence of prior surgery and prominent tendinopathy and partial thickness surface tears without retraction." Dr. Thomas concluded Employee had tears of the left and right supraspinatus tendons and ordered an orthopedic referral.

Employer provided a panel of orthopedic specialists from which Employee selected Dr. William Mayfield. Employee first saw Dr. Mayfield on July 22, 2019, with complaints of low back and bilateral shoulder pain. Dr. Mayfield reported that Employee complained of pain in both shoulders but described no radiating pain and no numbness or tingling in his arms. Employee told Dr. Mayfield he had undergone left shoulder surgery several decades earlier, but he had experienced no further problems with that shoulder prior to the work accident. Dr. Mayfield noted that the MRI reports showed evidence of prior surgery to both shoulders, as well as partial thickness rotator cuff tears "with superimposed tendinosis" in both shoulders. Dr. Mayfield recommended a course of conservative treatment, including physical therapy.

When Employee returned to Dr. Mayfield in August 2019, he reported no significant improvement from physical therapy. Dr. Mayfield reiterated the same diagnosis of partial rotator cuff tears in both shoulders. He discussed with Employee the possibility of performing surgery to repair the partial rotator cuff tears. Because Employee was experiencing more pain in the left shoulder, Dr. Mayfield proposed performing the left shoulder surgery first.

When later asked to address the issue of causation during his deposition, Dr. Mayfield testified as follows:

> As to whether that particular injury caused a partial rotator cuff tear, I think that's much harder to support with that mechanism of injury . . . . [R]otator cuff tears typically do not occur with a direct blow to the back. So they typically occur if something's falling and you reach out and grab it, or you're falling and you reach out and grab something. It's by using that muscle, not having that muscle struck . . . .

2

However, Dr. Mayfield expressed the opinion that Employee suffered an aggravation of his pre-existing conditions as a result of the work accident. When asked whether the work accident was the primary cause of that aggravation, Dr. Mayfield responded, "[i]t seems like, yes." With respect to the need for surgery, Dr. Mayfield testified that Employee reported having no shoulder pain prior to the work injury. He then stated, "if the primary goal of surgery is pain relief, then, yes, the injury is the need for the surgery."

On cross-examination, however, Dr. Mayfield acknowledged that, based on the MRI findings, he could not state within a reasonable degree of medical certainty when the partial rotator cuff tears occurred. He also admitted that his causation opinion is necessarily based on an accurate history as related by the patient. Finally, he admitted that the mechanism of injury is not consistent with suffering a partial rotator cuff tear. More specifically, Dr. Mayfield agreed that the mechanism of injury described by Employee was "highly unlikely" to have caused the partial rotator cuff tears.

With respect to the low back condition, Dr. Mayfield recommended a referral to a spine specialist in August 2019. Thereafter, Employee selected Dr. James Fish from a panel of orthopedic specialists. According to Dr. Fish's later testimony, during the first visit in September 2019, Employee complained of worsening left-sided low back pain.[1] He did not express complaints related to the neck at that time. X-rays of the low back revealed degenerative changes and arthritis. In addition, a lumbar MRI showed degenerative disc disease and facet arthritis. With respect to Employee's prior medical history, Dr. Fish was aware of a "previous lumbar issue" and a prior cervical fusion at C5-C7. When Dr. Fish later testified concerning the issue of causation, he opined that the work accident aggravated Employee's pre-existing lumbar condition "more likely than not."

As a result of Dr. Fish's initial examination, he ordered lumbar facet injections and sent Employee for physical therapy. In October, Employee reported no improvement in his lumbar symptoms, and Dr. Fish recommended he attempt to return to work full duty while wearing a back brace.[2] In December 2019, Employee reported some improvement of his ongoing lumbar pain and also reported "having neck issues." According to Dr. Fish's testimony, Employee "relayed that the neck pain was shooting into both paraspinal muscles with electric shocks going down into his thoracic spine."

At the December visit, Dr. Fish diagnosed cervical myelopathy and ordered an MRI of the cervical spine. With respect to the issue of causation regarding the cervical spine condition, Dr. Fish testified, "With no injury after January 2019, and no treatment prior to

---

[1] Dr. Fish's deposition reflects that he began seeing Employee in September 2019, but the medical records included in the record on appeal begin with Dr. Fish's report of February 10, 2020.

[2] Although Dr. Fish's initial diagnosis included the phrase "with radiculopathy," which would indicate radiating nerve pain, he later testified there was no objective evidence of radiculopathy and a finding of radiculopathy "shouldn't have been in the diagnosis."

that, I would have to assume that that injury either caused the injury to the neck or exacerbated the pre-existing condition."[3]   With respect to the primary cause of the aggravation of Employee's pre-existing cervical spine condition, Dr. Fish stated, "based on all the information given here, it would be the work-related injury of January 2019."

In February 2020, Dr. Fish reviewed the MRI results and noted evidence of "a significant extruded disc at C3-C4, causing severe stenosis on both sides." There was also evidence of a "significant disc protrusion at [C]4-5, causing bilateral stenosis." However, Dr. Fish was not able to say whether those findings represented anatomic changes caused by the work accident, stating, "I couldn't with – in good faith, say exactly what anatomic changes came from [the work accident] because, A, he complained of the symptoms late to me; B, the MRI was remote from the injury. So it's very hard to directly correlate anatomic changes." As a result of his clinical evaluation and the diagnostic findings, Dr. Fish recommended a two-level cervical fusion, but authorization for the procedure was denied. When asked to identify the primary cause of the need for cervical spine surgery, Dr. Fish responded, "I would assume it's from the work-related injury in January of 2019 . . . [b]ecause there's no other injuries that I can relate the pathology to."

On cross-examination, Dr. Fish acknowledged that the mechanism of injury as described by Employee was not consistent with the objective findings in Employee's neck. He also admitted that the degenerative conditions in Employee neck and low back were not caused by the work accident. Moreover, Employee reported no complaints of neck symptoms for several months after Dr. Fish's initial evaluation and almost one year after the work accident. More specifically, Dr. Fish testified,

> [I]f you get six months out . . . and you haven't complained to anybody at all about the neck and arms . . . it would be very hard to relate . . . . So for, you know, a few months, I could see somebody ignoring one symptom or not talking to somebody about it. But, you know, once you get to six months out, I feel like he should have had symptoms, if it was directly causally related to that . . . . [I]f the first time he complains to anybody is when he comes to see me in December regarding the neck and arms . . . then I would not be able to, within a reasonable degree of medical certainty, relate that to the January 2019 injury 11 months earlier.

Over the next several visits with Dr. Fish, Employee complained of ongoing low back pain. Dr. Fish continued to prescribe medications and recommended a sacroiliac joint injection. Because the recommendation for a cervical fusion had been denied, Dr. Fish concentrated additional evaluation and treatment on the lumbar spine. Dr. Fish testified he did not believe lumbar surgery was warranted at that time, and he indicated he would refer Employee to a physiatrist for pain management if his lumbar symptoms persisted.

---

[3] Dr. Fish testified that the terms "exacerbation" and "aggravation" are used interchangeably in this context.

Employee also introduced testimony from Dr. David West, an orthopedic physician specializing in sports medicine. Dr. West reviewed Employee's medical records and conducted a physical examination of Employee in December 2021. He also reviewed the deposition testimony of Drs. Mayfield and Fish. With respect to an appropriate diagnosis related to the cervical spine, Dr. West testified Employee's condition "was essentially an aggravation injury to an already preexisting condition." Dr. West found it significant that Employee had experienced no symptoms in his neck for at least ten years prior to the work accident and then developed worsening symptoms after the work accident. With respect to the primary cause of the need for cervical fusion, Dr. West concluded, "I would call it the trauma from the steel door hitting him on January [1, 2019]."

Following an expedited hearing, during which Employee and Employer's owner testified, the trial court determined Employee had not come forward with sufficient evidence to indicate a likelihood of prevailing at trial in proving that the need for bilateral shoulder surgeries and the cervical spine fusion arose primarily from the work accident. Although the trial court acknowledged that "[t]he evidence is close on the issue of causation," it ultimately determined Employee had not met his burden of proof. Employee has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). Moreover, a trial court has the discretion to determine which testimony to accept when presented with conflicting expert opinions, and we review such determinations using an abuse-of-discretion standard. *Johnston v. Siskin Steel & Supply Co.*, No. E2020-00799-SC-R3-WC, 2021 Tenn. LEXIS 241, at *30-31 (Tenn. Workers' Comp. Panel Feb. 10, 2021). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

**Analysis**

It is well settled that an injured employee bears the burden of proving every essential element of his or her claim for workers' compensation benefits. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn.

Workers' Comp. App. Bd. Aug. 18, 2015). However, at an expedited hearing, the employee's burden of proof to establish entitlement to certain benefits is different than at trial. As we have explained, "an employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, as reflected in the plain language of subsection 239(d)(1), the judge may issue an interlocutory order upon determining that the employee would likely prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). In reviewing a trial court's determination in this regard, we are to apply a presumption that the court's findings are correct, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-239(c)(7).

When a trial court is faced with conflicting expert opinions, it may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017). As noted above, we review such determinations under an abuse-of-discretion standard. *Sanker v. Nacarato Trucks, Inc.*, No. 2016-06-0101, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (Tenn. Workers' Comp. App. Bd. July 6, 2016). A trial court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009).

In the present case, Employee asserts on appeal that the trial court erred in finding he had not met his burden of proof with respect to the need for bilateral rotator cuff repairs and a cervical fusion. It is undisputed that Employee suffered a compensable work accident on January 1, 2019, when a trailer door struck Employee on the back. Employee received authorized medical care with Dr. Frank Thomas, Dr. William Mayfield, and Dr. James Fish. Dr. Mayfield evaluated and treated Employee's shoulders, while Dr. Fish evaluated and treated his spine. Employee was also evaluated by Dr. David West.

This case hinges on each physician's causation opinions. More specifically, the trial court was tasked with determining whether Employee is likely to prove at trial that the need for bilateral rotator cuff and cervical spine surgeries arose primarily from the work accident. With respect to Employee's bilateral shoulder condition, Dr. Mayfield was asked repeatedly during his deposition to address the cause of Employee's need for surgery. Ultimately, although he wavered on the issue, Dr. Mayfield opined that it was unlikely the partial rotator cuff tears that would be repaired in surgery arose primarily from Employee's work accident.

In his brief on appeal, Employee asserts he has shown a likelihood of proving at trial that the work accident caused a compensable aggravation of his pre-existing shoulder condition and that, because he suffered no pain before the work accident but suffered pain after the work accident, the need for surgery was primarily related to the pain arising from the work accident. However, this argument does not take into account the various burdens set out in Tennessee Code Annotated section 50-6-102(14). In subparagraph (A) of that section, an injured employee must prove that the aggravation of a pre-existing condition arose primarily from the work accident, meaning that the work accident contributed more than 50% in causing the aggravation, considering all causes. Separate and apart from that burden, subparagraph (C) requires an injured worker to prove that the work accident was more than 50% of the cause of the need for medical treatment, considering all causes. Here, although the trial court agreed Employee is likely to prove a compensable aggravation of his pre-existing shoulder condition, it determined Employee had not shown a likelihood of proving that the need for bilateral rotator cuff repairs was primarily caused by the work accident, considering all causes. Specifically, the trial court noted, "When asked whether the need for surgery was causally related to the January 2019 incident, Dr. Mayfield concluded, 'well, there's no way to tell whether the partial tear was related to the injury. It's unlikely.'" In short, we find no error in the trial court's determination that Employee has not shown a likelihood of proving that the need for bilateral rotator cuff repairs was more than 50% caused by the work accident, considering all causes.

With respect to the cervical spine condition, although Dr. Fish testified that Employee's pre-existing cervical spine condition was aggravated by the work accident, he had a more difficult time addressing the need for a cervical fusion. For example, Dr. Fish could not state that any of the anatomic changes in Employee's cervical spine correlated to the work accident. He also addressed the timing of Employee's neck complaints by stating that "if the first time he complains to anybody is when he comes to see me in December regarding the neck and arms – then I would not be able to, within a reasonable degree of medical certainty, relate that to the January 2019 injury 11 months earlier." Finally, he agreed with counsel for Employer that the disc protrusion at C4-5 was "more likely than not" caused by "adjacent segment collapse from a previous fusion." He then provided what he described as his "final answer" by stating, "I would say that the neck is not related to the incident in January 2019."

Finally, the trial court considered Dr. West's testimony with respect to the cervical spine condition but noted that his causation opinion, based on a single evaluation and review of medical records, was insufficient to overcome the authorized treating physician's causation opinion. With respect to the shoulder condition, Dr. West agreed that it was unlikely the work accident was the primary cause of the partial rotator cuff tears but deferred to Dr. Mayfield on this issue.

In his brief on appeal, Employee relies on Dr. Fish's opinion that the cervical fusion is medically necessary and reasonable, combined with Dr. West's opinion that the need for

the cervical fusion was causally related to the work accident. Employee further argues that the trial court, in effect, applied the "cancellation rule" to disregard Dr. Fish's various and often conflicting statements addressing causation. We disagree. The trial court was tasked with determining whether Employee is likely to prevail at trial in proving that the need for the cervical fusion arose primarily from the work accident. The trial court thoroughly reviewed and assessed all relevant expert medical testimony addressing this issue and concluded Employee had not met that burden. We agree.

Based on our review of the record, we cannot conclude that the trial court abused its discretion in assessing the expert medical opinions. The trial court's determination was within the range of reasonable alternatives, and it would be improper for this reviewing tribunal to substitute its judgment for that of the trial court under these circumstances. *See, e.g.*, *Muncy v. Premium Distributors, Inc.*, No. 2017-03-0447, 2018 TN Wrk. Comp. App. Bd. LEXIS 65, at *13 (Tenn. Workers' Comp. App. Bd. Dec. 19, 2018) ("[W]e will not substitute our determination of the weight to be accorded an expert opinion absent an abuse of discretion by the trial judge."). Moreover, in reviewing a trial judge's exercise of discretion, we presume the trial judge's decision is correct and review the evidence in a light most favorable to upholding the decision. *Lovlace v. Copley*, 418 S.W.3d 1, 16-17 (Tenn. 2013). Thus, in considering the totality of the evidence presented at the expedited hearing, we conclude the evidence does not preponderate against the trial court's determination.

## Conclusion

For the reasons set out above, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employee.



| | | |
|---|---|---|
| Ronald D. Brawley | ) | Docket No. 2020-05-0775 |
| | ) | |
| v. | ) | State File No. 39924-2019 |
| | ) | |
| Construct All USA, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Pamela B. Johnson, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 14th day of July, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| R. Steven Waldron | | | | X | arlenesmith@wfptnlaw.com |
| Jeffrey Gene Foster | | | | X | jfoster@morganakins.com jtallent@morganakins.com |
| Pamela B. Johnson, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov